IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of YMC, INC., an Idaho corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>INSURANCE COMPANY OF THE WEST, a California corporation; and EAGLE ROCK TIMBER, INC., an Idaho corporation,<br><br>        Defendants. | Case No. 1:09-CV-543-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it YMC's motion for post-judgment attorneys' fees and costs. (Dkt. 75). For the reasons stated herein, the motion is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

YMC's initial complaint in this matter, filed on October 23, 2009 against Insurance Company of the West ("ICW"), alleged that ICW, as provider of a surety bond under the Miller Act (40 U.S.C. §§ 3131 *et seq.*), owed YMC $711,419.00 for labor, materials, and services, resulting from Eagle Rock Timber's breach of a subcontract with

**Memorandum Decision and Order - 1**

YMC. *Complaint*, Dkt. 1 at ¶¶ 5-15. YMC also sought attorneys' fees under Idaho Code §§ 12-120 and 12-123. *Id.* at ¶ 15. After Eagle Rock intervened, YMC filed its First Amended Complaint ("FAC"), adding a breach of contract claim against Eagle Rock. *First Amended Complaint*, Dkt. 31 at ¶ 6-11. YMC reiterated its claim for attorneys' fees under Idaho law.

After mediation, YMC accepted the defendants' offer of judgment for the full amount sought. The Court entered judgment on February 18, 2011. Dkt. 68. YMC then moved for post-judgment attorneys' fees from Eagle Rock in the amount of $13.757.16, and post-judgment costs from both parties in the amount of $307.65. Dkt. 75.

## DISCUSSION

Federal Rule of Civil Procedure 69(a) governs the procedure that applies to the enforcement of a money judgment in federal court. *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007). Rule 69(a) applies to a motion for post-judgment attorneys' fees. *Id*. Rule 69(a) requires a federal court to apply state law to "proceedings supplementary to and in aid of a judgment" unless there is a federal statute that applies. *Id*. at 1060. Because there is no applicable federal statute granting fees, Idaho law applies. *Id*. Under Idaho law, a party who is entitled to reasonable attorney's fees and costs in the underlying action is also entitled to reasonable post-judgment attorneys' fees and costs incurred in attempting to collect on the judgment. I.C. § 12-120(5).

**Memorandum Decision and Order - 2**

YMC asserts two causes of action in the FAC: (1) a breach of contract claim against Eagle Rock, and (2) a Miller Act surety claim against ICW. This Court had original jurisdiction over the Miller Act claim, 28 U.S.C. § 1331, and YMC asserts that the Court exercised supplemental jurisdiction, under 28 U.S.C. § 1367, over what it argues was a state law breach of contract claim. The Defendants assert that because YMC never pleaded supplemental jurisdiction in its pleadings, choosing to rely solely upon the Miller Act to assert jurisdiction, it did not raise a state law claim independent of the Miller Act claim. This distinction is significant because the Miller Act generally does not allow for recovery of attorneys' fees, *United States ex rel. Reed v. Callahan*, 884 F.2d 1180, 1185 (9th Cir. 1989), *cert. denied*, 493 U.S. 1094 (1990), and YMC does not seek attorneys' fees from ICW on its Miller Act claim.

In the FAC, YMC explicitly asserted jurisdiction on the basis of the Miller Act alone. The question is thus whether YMC's breach of contract claim against Eagle Rock should be presumed by this Court to have implicitly arisen under state law and not the Miller Act.

Eagle Rock argues that YMC cannot rely on its facial characterization of its breach of contract claim as one of state law and cites *United States ex rel. Leno v. Summit Construction Co.*, 892 F.2d 788 (9th Cir. 1989), in support. In *Leno*, a subcontractor asserted breach of contract and quantum meruit claims against a general contractor. Both

**Memorandum Decision and Order - 3**

claims were "brought pursuant to the Miller Act." *Id*. at 791. Stymied by the Miller Act's prohibition against attorneys' fees, Leno argued on appeal that the claims were based on pendant state jurisdiction and not the Miller Act. *Id*. The Ninth Circuit affirmed the district court's denial of attorneys' fees, finding that "Leno's claims arose under the Miller Act." *Id*. "[U]nless there is a separate state claim at the trial level attorneys' fees are not available in a Miller Act suit even when state law provides for such an award." *Id*.

YMC argues that two factors distinguish the present matter from *Leno*: (1) the *Leno* plaintiff affirmatively asserted that both claims were brought pursuant to the Miller Act and the *Leno* court erred in holding that breach of contract and quantum meruit claims may be brought under the Miller Act, and (2) the *Leno* plaintiff, as noted by the Ninth Circuit, failed to mention Idaho Code § 12-120 in its complaint. A deeper foray into the muddied waters of the Miller Act is necessary.

<u>Claims That May Be Brought under the Miller Act</u>

The Miller Act requires a general contractor awarded a federal contract to purchase a payment bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract." 40 U.S.C. § 3131(b)(2). Any party, having furnished labor or material and being unpaid, may bring a civil action "on the payment bond for the amount unpaid." 40 U.S.C. § 3133(b)(2). The Miller Act does not provide a

remedy for common law contractual damages above and beyond labor and materials.

Accordingly, YMC asserts that the "Miller Act does not allow a plaintiff to allege a state contract claim"; its breach of contract claim must necessarily be distinct and arise under state law. *Reply Br.*, Dkt. 78 at 3. Though the Miller Act's text appears to support this assertion, the Ninth Circuit found in *Leno* that a subcontractor's claims against the general contractor, including breach of contract and quantum meruit, "arose under the Miller Act" and not under state law, because the were not expressly pled as state law claims. 892 F.2d at 791. The *Leno* subcontractor asserted no claims against the government contractor's surety. *See also Tapat v. Sandwich Islands Const., Ltd.*, 942 F.2d 794, 1991 WL 162316, *1 (9th Cir. 1991) (unpublished opinion) (citing *Leno*, breach of contract and quantum meruit claims brought against general contractor, not surety, under Miller Act).

Other circuits have taken an arguably different approach, noting that "the Miller Act does not govern actions by a subcontractor against a general contractor for breach of contract." *Lighting & Power Services, Inc. v. Roberts*, 354 F.3d 817, 822 (8th Cir. 2004). The *Leno* court entertained what it described as a Miller Act claim for breach of contract brought by a subcontractor against a general contractor; the *Roberts* court held that such claims cannot be brought under the Miller Act. This divergent approach can best be reconciled with an understanding of what the respective courts mean by 'breach of

**Memorandum Decision and Order - 5**

contract.'

> A surety's liability under the Miller Act is measured by the general contractor's liability under the construction contract. . . . Claims brought under the Miller Act, however, are federal causes of action and are separate and distinct from state law breach of contract actions. . . . Therefore, a subcontractor must specifically plead a breach of contract claim under state law in addition to raising a Miller Act claim if it wishes to recover damages under a contract theory.

*Consolidated Elec. & Mechanicals, Inc. v. Biggs General Contracting*, 167 F.3d 432, 435 (8th Cir. 1999). *Leno*, and those cases subsequently relying thereon, likely interpreted a breach of contract claim brought against a general contractor under the Miller Act as being legally analogous to a surety claim for labor and materials against the surety, due to the fact that a surety's liability is measured only by the "general contractor's liability under the construction contract." *Consolidated Elec.*, 167 F.3d at 435. The *Leno* court's use of the term "breach of contract" is arguably misleading because it implies the availability of common law contractual remedies, but these remedies are unavailable under the Miller Act. *Cf. United States ex rel. Yonker Constr. Co. v. Western Contracting Corp.*, 935 F.2d 936, 940-42 (8th Cir. 1991) (allowing subcontractor to recover full extent of contractual damages such as depreciation of tool value and general liability insurance premiums because it pleaded a pendent state law claim in addition to its claim under the Miller Act).

Because the Miller Act does not govern state law breach of contract claims

**Memorandum Decision and Order - 6**

between a subcontractor and a general contractor, the Court concludes that the claim brought in *Leno*, though perhaps not described precisely, was a claim for labor and materials against the surety. Accordingly, the inquiry in this case is whether YMC pleaded a distinct state law breach of contract claim falling outside the ambit of the Miller Act.

### YMC Did Not Plead a Distinct State Law Breach of Contract Claim

A plaintiff need not necessarily explicitly plead supplemental jurisdiction to invoke it. *See Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 674 (6th Cir. 2005) ("Plaintiffs do not need to specifically plead the supplemental jurisdiction statute, nor do they need to specifically identify state law claims as such if the cause of action obviously exists under state law."); *United States v. Black*, 725 F. Supp. 2d 1279, 1289 (E. D. Wn. 2010) ("Plaintiffs are not required to explicitly plead and invoke supplemental jurisdiction."). For three reasons, the Court holds that YMC did not implicitly plead a state breach of contract claim distinct from its Miller Act surety claim.

First, YMC's only reference to jurisdiction in either complaint was to the Miller Act. Though not dispositive, YMC's failure to plead 28 U.S.C. § 1367 is evidence that it considered its claims to be federal in nature.

Secondly, YMC's original complaint asserted only a Miller Act claim against Eagle Rock's surety, ICW, for labor and materials in the amount of $711,419.00.

**Memorandum Decision and Order - 7**

Significantly, when YMC filed its FAC, it sought no additional sums from Eagle Rock, despite allegedly asserting a distinct state law breach of contract claim. When the matter settled via mediation, the agreed amount was $711,419.00. A successful state law breach of contract claim would not be limited to recovery of labor and materials alone; the full panoply of common law contractual damages would be available, and a party intending to plead such a distinct claim would surely seek such damages. The fact that YMC sought identical damages when pleading the Miller Act claim alone as when it pleaded the Miller Act and the breach of contract claim indicates intent to recover labor and materials under the Miller Act, and nothing further.

Third, YMC asserts that its pleading of Idaho Code § 12-120 exhibits intent for state law to be applied to its breach of contract claim against Eagle Rock. This assertion is undercut, however, by the fact that YMC pleaded § 12-120 in its initial complaint, when the sole pleaded claim undisputedly arose under the Miller Act, which does not permit an award of attorneys' fees. To argue that pleading § 12-120 in the FAC serves as indication of intent to bring a distinct breach of contract claim under state law is unavailing, when § 12-120 was pleaded in the original complaint.

## CONCLUSION

YMC may not recover attorneys' fees because its claims arose under the Miller Act; it did not plead a separate and distinct breach of contract claim under state law.

**Memorandum Decision and Order - 8**

# ORDER

**IT IS ORDERED:**

1. Plaintiff's motion for post-judgment attorneys' fees and costs (Dkt. 75) is

    **DENIED**.

DATED: **July 9, 2011**



_____
Honorable B. Lynn Winmill
Chief U. S. District Judge